ORIGINAL

IN THE DISTRICT COURT OF THE UNITED STATES

MIDDLE DISTRICT OF ALABAMA

MONTGOMERY DIVISION

RECEIVED

2007 JAN -5 A 9: 3

DEBRA P. HACKETT, CL.
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| PATRICK LAVENDER, | * | |
| Petitioner, | * | |
| | * | |
| V. | * | CASE  No. 2:07 CV 22 - MEF |
| | * | 8:03-CR-184-T-30EAJ,- |
| D.DREW, WARDEN, &- | * | (TAMPA), FL. |
| UNITED STATES OF AMERICA, | * | |
| Respondents. | / | |

## PETITION FOR WRIT OF HABEAS CORPUS, 28 U.S.C. §2241

COMES NOW PETITIONER, PATRICK LAVENDER, by and through himself, in **Pro-Se**, in this cause, a **Writ for Habeas Corpus, 28 U.S.C. §2241**. Petitioner states that he is currently in **custody** of The Bureau of Prisons at Federal Prison Camp, Maxwell Air Force Base, Montgomery, Alabama. That he has been siezed in violation of the Protections of The **Fourth Amendment** and deprived of Liberty within the literal language of the **Fifth Amendment**,-without the Due Process of Law, and that Petitioner, a Citizen of **one of these United States,** continues to be held against these hallowed principals of The United States Constitution.

In support of these claims, Petitioner would state as follows:

### JURISDICTION

Original Jurisdiction of this District Court is invoked under **Article III,cl I,** United States Constitution, and statutory vehicle of Title 28, U.S.C. **2241, 28 U.S.C. §1331.**

**(PAGE ONE)**

> "Writ of Habeas Corpus is procedural device
> for subjecting executive, judicial, **or private**
> restraints on liberty to judicial scrutiny; where
> it is available, it assures, among other things,
> that prisoner may require his jailer to justify
> detention under law."
> **Peyton v. Rowe**, (1968) 391 US 54, 20 L Ed 2d 426,
> 88 S Ct 1549.

## LIMITATIONS OF ACTIONS,-AEDPA

While Petitioner has remained in custody since his **original**

**UnConstitutional Seizure of his person, for in excess of Three-**

**Years at this juncture, limitations on actions subject to the**

**One-Year Window allowed by the AEDPA**, Anti Terrorist and Death

Penalty Act of 1996, **Do Not Apply in this case**, where personal

Jurisdiction was never obtained by proper process, and Petitioner

was seized and deprived of Liberty by violation of the literal

guarantees of The **Fourth and Fifth Amendments**, U.S. Constitution.

Therefore, on the grounds that petitioner's Federal Trial was

conducted illegally, and thus, his current detention, this §2241-

Petition is appropriately brought to this Court.- at this time.

> "The Supreme Court "has recognized **full
> retroactivity** as a necessary adjunct to ruling
> that a trial court lacked authority to convict
> or punish a criminal defendant in the first
> place".
> **United States v. Johnson**, 457 U.S. 537, 102,
> S Ct. 2579, 73 L Ed 2d 202,(1982), **Id.at 550,
> 102 S Ct. 2579**, citing **United State Coin and
> Currency**, 401 U.S. 715, 724, 91 S Ct 1041, 1046,
> 28 L Ed 434, (1971).

"[J]urisdictional issues are never waived and can be raised-

-on collateral attack". UNDERLINE STATES V. COOK, 997 F.2d 1312-

1320, (10th Cir. 1990)

**(PAGE TWO)**

## STATEMENT OF CASE

**ON MAY 6, 2003,** on or around **3.00 P.M.,** Petitioner Patrick Lavender was pulled over while driving near his home by **Sarasota, Florida, City Police Dept.,** without having committed any traffic or other violation warranting the traffic stop. The vehicle was then searched, and nothing unlawful found. Petitioner was then **seized, handcuffed, removed to a second Police vehicle,** and taken downtown to Police headquarters by **Forcible Abduction,** and **without petitioner's voluntary consent.**

At the Sarasota Police Station, attempted Interrogation concerning illicit drug activities was initiated-without an Attorney present. Miranda warnings were not given. After several hours in custody, and without notification of any charges warranting continued detention, Petitioner was then transferred to **Tampa, Florida County Jail,** where he was fingerprinted. Again, -**without notification of any charges, written or verbal.**

Petitioner was taken in front of a Federal Magistrate for Arraignment on Federal Drug Charges, **abruptly from Tampa County Jail,** on **May 7, 2003.** An attorney was appointed. **The Attorney demanded Arrest Warrant** in Open Court, and none were produced. The arrainment itself was **Postphoned until** May 12, 2006. **The- fact here is,** that from the time of being pulled over, taken into custody by Sarasota Police, fingerprinted and removed to Tampa County Jail, **there were No Warrants, No Indictment, No Probable Cause stated in any Process or Complaint.** In fact, a Criminal Complaint **was not sworn until May 7.** Personal-

**(PAGE THREE)**

## STATEMENT OF CASE

- Jurisdiction was not obtained by any process on **May 6**, day of seizure, nor was any **Probable Cause existing for the traffic-stop or any exigent circumstance** existing that would warrant Mr.-Lavender's seizure from his vehicle and subsequent illegal-detention, transfer to another Florida Jurisdiction, and finally to Federal Jurisdiction on **May 7**, 2003. By the time **overzealous DEA Agent** filed a **Criminal Complaint on May 7, Petitioner had already been in custody for 24-Hours with No Charges**.

In the interim of the Sarasota Police' Traffic Stop resulting in Petitioner's personal seizure and illegal detention at the Police Station, a search warrant was obtained during the detention and while petitioner was in custody, for the search of his home. The search revealed illegal cocaine. However, this evidence was **collected only after the illegal personal seizure**, and later attributed to Petitioner's roommate, **who took full responsibility**.

When Petitioner appeared in U.S. District Court on the **complaint filed on May 7**, there was No Indictment. No Indictment would be issued returned until **May 8**. The **Magistrate refused-to conduct Arraignment on May 7**, and postphoned any arraignment until **May 12**. **During the brief appearance on** May 7, Petitioner was appointed defense counsel, who **DEMANDED PRODUCTION OF ARREST WARRANT**. NO ARREST WARRANT WAS EVER PRODUCED. The Defense Lawyer never again requested any warrant at subsequent proceedings, and this defense neglect constituted **Ineffective Assistance of Counsel**.

**(PAGE FOUR)**

## STATEMENT OF CASE

The clear facts in this case that the local Police acting at the behest of overzealous **Federal Drug Enforcement Agents**, put the proverbial-**"Cart before the Horse"** and then SEIZED AND DEPRIVED PETITIONER OF LIBERTY WITHOUT THE DUE AND ORDERLY PROCESS OF LAW, AND CONTRARY TO THE PROTECTIONS AND GUARANTEES OF THE FOURTH, FIFITH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION. PETITIONER'S RESULTING TRIAL WAS ILLEGAL, HIS GUILTY PLEA VOID, AND HIS PAST AND CURRENT DETENTION, -ILLEGAL AND UNCONSTITUTIONAL.

## AFFIDAVIT OF FACTS

Petitioner, Patrick Lavender, deposes and says the following-are sworn to be true:

**(1.)** That I was pulled over while driving my rental vehicle, by Sarasota, Florida, city Police Department, on **May 6,** 2003, without having violated, or otherwise cited for violation of any traffic laws.

**(2.)** I was then handcuffed and taken into custody of Police, who also at that time, **Seized my Rental Vehicle.**

**(3.)** No Probable Cause was stated for the traffic stop and seizure of my person and vehicle. **No Process was served**, nor **was I otherwise informed of any reasons for the seizure(s).**

**(4.)** I was taken downtown to Police station and questioned about illicit drug activity <u>without an attorney present.</u>

**(PAGE FIVE)**

## AFFIDAVIT OF FACTS

**(5.)** I was then transferred to Tampa, Florida County Jail and figerprinted, <u>**without being advised of any charges.**</u>

**(6.)** On <u>**May 7, 2003,**</u> the <u>**next day**</u> after my seizure, detention, transfer, fingerprinting and continued detention without being informed of any charges, <u>**a criminal complaint was filed.**</u>

**(7.)** A <u>Criminal Complaint was **Filed May 7, 2006,**</u> by Frank Ciara, Drug Enforcement Agent, for The United States-(DEA), **charging that Probable Cause existed for violation of Title 21,§846, and §841(a)(1)(A),** conspiracy to possess cocaine.

( SEE ATTACHED, <u>**"EXHIBIT-"A" )**</u>.

**(9.)** **Probable Cause was stated <u>Ex-Post Facto</u> by this untimely Complaint,** and on <u>**Page 6, item No. #19,**</u> of Attached Exhibit "A", therein confirms the manner by which I was taken into custody, a day before this complaint was filed, and the evidence stated seized from my residence, was seized by search warrant-<u>**after the fact of my personal seizure**</u>. A roomate susequently took full responsibility for any and all illegal items found.

**(10.)** I was forced to appear in U.S. District Court on <u>**May 7,**</u> was appointed defense attorney, who then <u>DEMANDED PRODUCTION OF ARREST WARRANT COPY.</u>

**(11.)** <u>NO ARREST WARRANT COPY WAS PRODUCED</u>, and The U.S. Magistrate <u>POSTPHONED ANY ARRAIGNMENT.</u>-(UNTIL MAY 12, 2003)

**(12.)** I WAS **NOT INDICTED** FOR ANY CHARGE UNTIL <u>**MAY 8,**</u> 2003.

(SEE ATTACHED, <u>**EXHIBIT- "B"**</u> )
**(PAGE SIX)**

## ANALYSIS AND ARGUMENT

"The Fourth [A]mendment protects **people** from unreasonable Seizures as well as unreasonable Searches ", <u>UNITED STATES VS.-PLACE</u>, 462 U.S. 696, 701, (1983)

**PETITIONER WAS SEIZED**, constituting an illegal arrest, on **May 6, 2003**, when pulled over while driving, handcuffed and transferred to Police Headquarters and interrogated without an Attorney present. The facts show that this action by the Sarasota Police on that date, was done at the behest of **overzealous** Federal Law Enforcement agents of the **DEA. This subsequent detention, without legal process, warrant or other complaint,** <u>DEPRIVED PETITIONER OF FUNDAMENTAL FAIRNESS AND LIBERTY-WITHOUT DUE PROCESS OF LAW.</u>

> **"Freedom from imprisonment, government custody,** or other forms of physical restraint **lies at the heart of liberty that the Due Process Clause of Federal Constitution's Fifth Amendment protects:** <u>The government violates that clause unless detention is ordered: (1)</u> in a proceeding with adequate procedural protections..."
> <u>ZADVYDAS V. DAVIS</u>, (2001) 533 US 678, 150 L Ed 2d 653, 121 S Ct 2491, 2001 CDOS 5455, 2001 Daily Journal DAR 6671, 2001 Colo J C A R 3494, 14 FLW-Fed S 442.

The criminal complaint, -"Exhibit-"A", filed on **May 7,2003,** -a full day afterwards of Petitioner's being taken into custody the previous day of **May 6, 2003**, would not authorize any seizure or detention on **May 6,** and this complaint apparently was hurriedly prepared as an afterthought when realizing no process or capias was in effect to have prior arrested-

**(PAGE SEVEN)**

## ANALYSIS AND ARGUMENT

-petitioner.

First, the traffic stop was entirely unjustified. Because Petitioner may have been known to Police through informants to be a suspected drug-dealer, this could not have provided probable cause-**United States v. Davis**, 94 F 3d 1465,(10th -Cir.,1996). And it has been held consistently in accordance with the **Fourth** Amendment, that "continued detention after traffic stop was unreasonble- **United States v. Dortch**, 199 F -3d 193 (5th Cir), amended, 203 F 3d 883 (2000); and that a "Tip" does not provide reasonble suspicion for traffic stops"- **United States v. Thomas**,211 F 3d 1186,(9th Cir.2000).

**Most importantly** here, Nothing illegal was in the possession of petitioner when the traffic stop occurred, that would warrant his seizure from the vehicle. Without Arrest Warrant, complaint or other judicial Process, petitioner was an **innocent citizen**, **who was not participating in any illegal activity at the time of Seizure and subsequent detention,** and was thereby ruthlessly set upon by Police/DEA.

It is further well established that Police cannot -**"Arrest First and Collect Evidence"** to justify that arrest later- **United States V. Myers**, (2002, CA3 Pa) 308 F 3d 251., and again, the **Criminal Complaint was not filed until the 7th**, of May, 2003.

Moreover, as petitioner was forced to appear in front of he U.S. Magistrate on **May 7**, the **Magistrate could not legally take his plea. As no Indictment had been filed, No Arrest Warrant had yet been issued.** The Magisrate then postphoned the Arraign-

**(PAGE EIGHT)**

## ANALYSIS AND ARGUMENT

-ment, until **May 12**, 2003, since No Indictment would be returned **util the NEXT DAY ON MAY 8**. Petitioner was simply-**NOT LEGALLY PRESENT IN COURT.**

What makes petitioner's circumstances **especially egregious**, is the fact that Petitioner was appointed a defense attorney at the **May 7**, Court Appearance, who realized something was seriously amiss. The Attorney then proceeded to **request production of an Arrest Warrant.** When NO ARREST WARRANT COULD BE PRODUCED, the A.U.S.A. invited conversation with the defense lawyer-**outside the courtroom**. After returning to the Courtroom, this request for production of arrest warrant, a serious Due Process Issue, **was then just dropped.**

Petitioner was then forced to proceed to illegally commenced Federal Court proceedings, whereby at the urging of this same defense lawyer, petitioner entered into a guilty plea. The proceedings were illegal, as fundamentally unfair, where the initial seizure of Petitioner was a violation of the Fourth Amendment, and Personal Jurisdiction was not otherwise properly had by process which was unconstitutionally obtained.

## IN SUMMARY

**Petitioner**, as an innocent citizen, was ruthlessly seized without Probable Cause stated in any warrant, affidavit, complaint or other legal process, while driving his motor vehicle on **May 6**, 2003. Then unconstitutionally detained and deprived of liberty for more than **24 Hours BEFORE ANY PROCESS-**

**(PAGE NINE)**

## IN SUMMARY

### -WAS OBTAINED.

A criminal complaint concocted on **May 7, did not represent Probable Cause** for personal seizure on **May 6**. No other process existing, Petitioner was forced in front of U.S. Magistrate while not legally present. The Magistrate could not arraign a defendant when no Indictment had been yet returned, and same was not returned until next day of **May 8**.

Petitioner received Ineffective Assistance of Counsel, as his appointed Lawyer, requested production of arrest warrant in open Court, and when none could be produced by the government, proceeded to have ex-parte communications with the A.U.S.A, and then dropped this important **Due Process request for Warrants**.

The subsequent Federal Proceedings were Unconstitutional, petitioner's plea is void, "ab initio" as the Government never legally obtained personal jurisdiction of defendant.

Petitioner has been Seized and Denied Due Process of Law, in violation of the Fourth, Fifth and Fourteenth Amendments of The United States Constitution, his subsequent sentence illegal, his current confinement unconstitutional, and Petitioner claims **Right to Discharge, in relief.**

The above sworn under penalty for perjury,

**RESPECTFULLY SUBMITTED,**

THIS _3/_ DAY of December, 2006,

By-

/s/ _Patrick Lavender_

PATRICK LAVENDER, Petitioner
-Pro-Se.

**(PAGE TEN)**

## PROOF OF SERVICE

I, **PATRICK LAVENDER**, do hereby certify, swear and affirm, that I have cause true copy of the foregoing Writ for Habeas Corpus, **Title 28, U.S.C. §2241**, to be placed in the mail box of this Institution, correct U.S. Postage Paid, and addressed to the following Parties:

**D.DREW, WARDEN,**
**F.P.C., MAXWELL AIR FORCE BASE**
**MONTGOMERY, ALABAMA,    36112**

Anthony E. Porcelli,
**Assistant United States Attorney**
**400 North Tampa Street, Suite 3200**
**Tampa, Florida,         33602**

DONE, THIS _31_ DAY OF DECEMBER, 2006,

By-

/s/ _Patrick Lavender_

**PATRICK LAVENDER, Petitioner, Pro-Se**
#41071-018, MOBILE -E,
Federal Prison Camp, Maxwell AFB
**MONTGOMERY, ALABAMA, 36112**

(PAGE ELEVEN)

AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

vs.

JOSLYN WALKER,
PATRICK LAVENDER,
KENITH TURNER,
DAMOND MILLS, and
WANETTA PARKER

**CRIMINAL COMPLAINT**

CASE NUMBER: 8:03-m-

8: 03 - M - 1 9 4 MSS

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. From an unknown date through on or about May 6, 2003, in Sarasota County, in the Middle District of Florida, defendants did,

conspire to possess with intent to distribute and distribute five (5) or more kilograms of a mixture or substance containing a detectable amount of cocaine.

in violation of Title 21, United States Code, Sections 846, and 841(a)(1)(A). I further state that I am a Special Agent with Drug Enforcement Administration (DEA), and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_____
Signature of Complainant
**Frank Caira**

Sworn to before me and subscribed in my presence,

May 7, 2003                                    at    Tampa, Florida

HON. MARY S. SCRIVEN
United States Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

*HABEAS CORPUS EXHIBIT "A"*

N:\msantiago\APorcelli\Walker_2002R01313\f_complaint_package.wpd

## AFFIDAVIT

I, Frank Caira, being sworn to tell the truth, state the following information:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"), where I have worked for approximately four years. As a Special Agent with DEA, I have responsibility for investigating violations of federal criminal narcotics laws. During my employment as a DEA Special Agent, I have investigated violations of controlled substance laws, Title 21, of the United States Code.

2. Your affiant's own personal observations and experience, as well as information provided to me by a reliable and credible confidential sources, cooperating defendants, and other law enforcement officers, will serve as the basis for my opinions and conclusions set forth below. This affidavit does not set forth every fact resulting from the investigation; rather, it sets forth facts sufficient to establish probable cause to charge JOSLYN WALKER, DAMOND MILLS, PATRICK LAVENDER, KENITH TURNER, and WANETTA PARKER with conspiracy to possess with intent to distribute five or more kilograms of a mixture or substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 846, and 841(b)(1)(A).

3. During the past year, the Sarasota Police Department and the U.S. Drug Enforcement Administration participated in a joint investigation of an organization involved in the trafficking and distribution of cocaine and cocaine base (commonly known as crack cocaine/rock cocaine) operating in the Sarasota, Florida, area. JOSLYN WALKER, DAMOND MILLS, PATRICK LAVENDER, KENITH TURNER, and WANETTA PARKER were identified as the principal members of the organization. The investigation revealed that WALKER would travel from South Florida on a regular basis to Sarasota, Florida to supply kilogram quantities of cocaine to MILLS and LAVENDER, and that in turn MILLS and LAVENDER would distribute powder cocaine and/or cocaine base to other individuals in the Sarasota, Florida area. The investigation revealed that MILLS would specifically supply TURNER and PARKER with quantities of cocaine and/or cocaine base.

4. On 09/21/01, Detective Ross, of the Sarasota Police Department, interviewed a cooperating defendant (CD #1). CD #1 had been convicted in the Middle District of Florida for cocaine base distribution under Federal prosecution. Pursuant to a plea agreement, CD #1 cooperated with law enforcement. CD #1 stated one of his sources was a black male known as "PAT, later identified as PATRICK LAVENDER. CD #1 stated that he/she purchased multiple ounces of cocaine from LAVENDER and believed LAVENDER's supplier was a Jamaican male, later identified as JOSLYN WALKER.

5. On 01/22/03, Detectives Ross and Konstantopoulos, of the Sarasota Police Department, did interview a cooperating defendant (CD #2). CD #2 pled guilty without a plea agreement to Federal charges in the Middle District of Florida for conspiracy to distribute and distribution of cocaine base. CD #2 stated PATRICK LAVENDER, a.k.a. "CHOPPER," was selling cocaine in Sarasota, Florida. CD #2 stated that he/she has personally seen LAVENDER in possession of quantities of cocaine. CD #2 further added that KENITH TURNER and DAMOND MILLS were selling cocaine in the Sarasota, Florida area.

6. DEA Special Agent Rick Greer interviewed a cooperating defendant (CD #3). CD #3 pled guilty pursuant to a plea agreement to Federal charges in the Middle District of Florida for conspiracy to distribute and distribution of cocaine base. CD #3 stated that KENITH TURNER was his source of supply for cocaine base and a main supplier of cocaine base in Sarasota, Florida. CD #3 advised that he purchased several ounces of cocaine base from TURNER weekly. CD #3 estimated that TURNER sold between three (3) and four (4) kilograms of cocaine weekly in the Sarasota, Florida, area. CD #3 further stated that PATRICK LAVENDER sold approximately two (2) kilograms of cocaine weekly. According to CD #3, the cocaine distributed in Sarasota by DAMOND MILLS, KENITH TURNER, and PATRICK LAVENDER is supplied to them by "DRED," later identified as JOSLYN WALKER. CD #3 stated that WALKER, is from Miami, Florida, and often drove up kilogram quantities of cocaine from Miami to Sarasota. According to CD #3, WALKER supplied approximately twenty (20) kilograms of cocaine to MILLS, LAVENDER and others approximately every two weeks.

7. On August 1, 2002, Sarasota Police Department CS 1189 did purchase cocaine from LAVENDER with government pre-recorded funds. According to information provided to your affiant by the Sarasota Police Department, CS 1189 has been a reliable confidential source for the Sarasota Police Department for approximately one (1) year. During that time, CS 1189 has been deemed reliable and the information provided by CS 1189 has been corroborated by independent investigation. The information provided by 1189 has resulted in the arrests of approximately five (5) individuals for narcotics related crimes, and the seizure of large amounts of cocaine. Specifically on August 1, 2002, CS 1189 and CS 1093,[1] met with LAVENDER in the 1700 block of 32nd Street in Sarasota County, at which time CS 1189 purchased approximately two (2) ounces of cocaine. The cocaine was sent to the South-Eastern Regional Lab and later tested positive for cocaine.

8. On August 15, 2002, Sarasota CS 1189 and CS 1093 once again made contact with LAVENDER to make a control purchase of cocaine from him. This

---

[1] CS 1093 is no longer being utilized in this investigation as a confidential source due to his/her involvement in an unauthorized cocaine transaction related to the investigation.

time, the narcotics transaction took place in the area of Northgate and Route 301. CS 1189 was given government pre-recorded funds and was able to purchase approximately two (2) ounces of cocaine from LAVENDER. The cocaine was sent to the South-Eastern Regional Lab and later tested positive for cocaine.

9. On April 2, 2003, the Honorable Steven D. Merryday, United States District Judge for the Middle District of Florida, authorized the electronic interception of telephone facility 941-544-7258, a cellular telephone utilized by DAMOND MILLS ("the Mills wire"). The interceptions over the wire actually started on April 7, 2003.

10. On April 3, 2003, The Honorable Robert Bennett, Chief Judge of the Twelfth Judicial Circuit of the State of Florida authorized the electronic interception of wire communications of telephone facility (941) 232-2052 ("the Turner wire"). This telephone facility is utilized by KENITH TURNER. The actual interception of the wire communication commenced on April 9, 2003.

11. On April 26, 2003, a conversation was intercepted on the Turner wire. During this call, an individual asks TURNER for "four" (4) ounces of cocaine to be sold to him for three thousand dollars ($3,000).

12. On April 29, 2003, at 9:47 p.m., during an intercepted communication over the Turner wire an unnamed individual called TURNER and asked for "4 ½" ounces of cocaine. At 10:18 p.m., during an intercepted communication over the Turner wire, MILLS called TURNER at which time TURNER in substance asked MILLS for 4 ½ ounces of cocaine. MILLS agreed to drop off the cocaine to TURNER at 10:25 p.m. At 10:54 p.m., during an intercepted communication over the Turner wire, TURNER called the unnamed individual and in substance advised him that he now has the cocaine. The unnamed individual told TURNER that he would be leaving in soon. TURNER told the unnamed individual to meet him at his residence. The unnamed individual was observed arriving at TURNER's residence and leaving shortly thereafter. Uniform Patrol vehicles attempted to conduct a traffic stop on the unnamed individual after he left TURNER's residence, but a vehicle pursuit ensured. The unnamed individual was eventually apprehended and arrested on David Avenue in Sarasota, Florida, and was found to be in possession of one (1) piece of cocaine base. Subsequently, on April 30, 2003, at approximately 9:37 p.m., during an intercepted communication over the Turner wire the unnamed individual called TURNER and advised him that he was arrested shortly after leaving TURNER's residence. The unnamed individual in substance advised TURNER that the police did not locate the cocaine he purchased from TURNER because he discarded it while fleeing from the police.

3

13. On April 16, 2003, at 12:38 p.m., a conversation is intercepted on the Tuner wire. During this telephone call, PARKER in substance complains to TURNER about an unnamed individual. Specifically, PARKER was complaining because the unnamed individual was buying cocaine from PARKER, but now wants the telephone number for PATRICK LAVENDER because LAVENDER was apparently selling his cocaine cheaper than PARKER.

14. On April 28, 2003, a conversation was intercepted on the Mills wire. At 1:52 p.m., DAMOND MILLS called WANETTA PARKER at telephone facility (941) 362-9363, a telephone facility with a physical location at 1540 25th Street, Sarasota, Florida. During the conversation, MILLS in substance instructs WANETTA PARKER to sell drugs to two separate individuals. One of the individuals was subsequently observed by surveillance at 1540 25th Street, Sarasota, Florida.

15. Your affiant learned that in late April, 2003 and early May, 2003, MILLS AND LAVENDER's supply of cocaine was getting low and that they were requesting more cocaine from WALKER. Specifically, on April 26, 2003, at 4:24 p.m., the MILLS wire intercepted WALKER and MILLS having a conversation referencing MILLS assisting LAVENDER with LAVENDER's balance. The conversation in substance referenced WALKER advising MILLS that he did not want to make two trips. Your affiant believes that WALKER's instruction to help LAVENDER with his balance referred to MILLS helping LAVENDER sell what cocaine LAVENDER was holding and collect the related proceeds. That way, WALKER would be able to travel from South Florida to Sarasota and deliver cocaine to both parties at the same time, and in turn, collect the total of all monies owed to him by both subjects. Subsequently, on April 28, 2003, at 6:08 a.m., the MILLS wire intercepted LAVENDER and MILLS having a conversation in which they discussed having their "balance" taken care of prior to meeting with WALKER. On April 30, 2003, at 3:32 p.m., the Mills wire intercepted MILLS and WALKER having a conversation referencing MILLS having everything together with LAVENDER so that WALKER will not have to make two trips. During this conversation, WALKER stated in substance that MILLS needed to talk with "POLO", a.k.a. LAVENDER, before he would come to Sarasota. MILLS replied in substance that he had already talked with LAVENDER, and that LAVENDER had given him some "clothes" for WALKER. Subsequently, at 6:45 p.m., the MILLS wire intercepted MILLS and WALKER having another conversation at which time WALKER advised MILLS that he was working on it. Your Affiant believes that the "it" refers to WALKER bringing cocaine to MILLS and LAVENDER.

16. On May 2, 2003, the Mills wire intercepted MILLS having a conversation with PARKER, in which MILLS and PARKER in substance discuss that their supply of cocaine is low and that the quality of the cocaine they currently have

4

is poor, and that it would get better. Also, on May 2, 2003, during an intercepted communication over the Turner wire, TURNER in substance advises an unknown male that he will be receiving a new supply of cocaine in the near future. Further, on May 2, 2003, at approximately 5:27 p.m., during an intercepted communication over the Turner wire, TURNER in substance advised another unknown male that he would "be good" in the near future.

17. On May 4, 2003, at 5:36 p.m., during an intercepted communication over the Turner wire, MILLS in substance told TURNER that the delay in receiving a new supply of cocaine was a problem with LAVENDER. MILLS in substance said that LAVENDER was trying to get "straight." And again, on May 5, 2003, during an intercepted communication over the TURNER wire, MILLS in substance reiterated to TURNER that they are waiting on LAVENDER.

18. On May 7, 2003, between 6:00 a.m. and 6:30 a.m., two (2) calls were documented incoming to DAMOND MILLS' phone number (941) 544-7258 from JOSLYN WALKER's cell phone (305) 490-8455. Believing that WALKER was calling MILLS to advise that he was here in Sarasota or en route, surveillance was put on 1475 Deer Hollow Boulevard, the residence of PATRICK LAVENDER and a residence frequented by DAMOND MILLS. This is also a location where WALKER was observed by surveillance on April 9, 2003. At approximately 2:36 p.m., surveillance observed LAVENDER exit the residence and get in a GMC Sonoma pickup truck that was parked in the driveway. At approximately 2:37 p.m., surveillance observed the garage door open and a maroon Buick Rendezvous pull out. Both the Buick and the GMC drove westbound on Deer Hollow Boulevard. Detective Konstantopoulos of the Sarasota Police Department was standing by in the 1700 block of Honore, which is directly west of 1475 Deer Hollow Boulevard. Detective Konstantopoulos observed the GMC Sonoma, driven by LAVENDER, proceed westbound through the traffic light at Honore Avenue and 17th Street. Seconds behind the GMC Sonoma, Detective Konstantopoulos observed a maroon Buick Rendezvous. At the intersection of Honore Avenue and 17th Street, the Buick Rendezvous made a northbound turn onto Honore. Detective Konstantopoulos did follow that vehicle northbound on Honore to University Parkway. At the light at University Parkway and Honore Avenue, Detective Konstantopoulos did positively identify the driver as JOSLYN WALKER. Agents and Detectives surveilled the Buick Rendezvous on University Parkway to Highway 301, southbound on Highway 301, and then westbound on 32nd Avenue. In the 3200 block of North Osprey Avenue, a traffic stop was conducted on the Buick Rendezvous. The vehicle was driven by WALKER, and DAMOND MILLS was the only passenger. At that time, WALKER and DAMOND MILLS were taken into custody. Taken from MILLS' person were several ounces of cocaine. In the center console of the Rendezvous, approximately one-quarter (1/4) kilogram of cocaine was found.

5

19. On May 6, 2003, at approximately 3:00 p.m. LAVENDER was taken into custody while driving the above mentioned GMC Sonoma pickup in the area of 29th street and US 41, in Sarasota Fl. A search of the vehicle incident to his arrest revealed a ballistic or "bullet-proof" vest located in the cab of the vehicle. On that same date a federal search warrant was executed on LAVENDER's residence located at 1475 Deer Hollow Drive, Sarasota, Florida. Approximately 29 ounces of cocaine, one ounce of cocaine base, and four (4) wrappings for kilograms of cocaine. Also located in LAVENDER's residence was approximately $50,000.00 in U.S. currency bundled with rubber bands. Located in a bathroom was one electronic scale, baggies, and rubber bands (same type use to wrap money location in listed location). Receipts and other miscellaneous documents containing LAVENDER's and MILLS' names were located in LAVENDER's residence. The landlord to listed location was contacted on May 6, 2003. The landlord advised that he rented out listed location to LAVENDER on February 1, 2003. The landlord also advised that LAVENDER had recently advised him that he wanted MILLS to move in with him.

20. Also on May 6, 2003, a Federal Search Warrant was executed at 4836 Old Bradenton Road. The listed address is the residence of KENITH TURNER. Within this residence approximately $41,000.00 of U.S. currency was located. Also located in the residence were multiple kilogram wrappings, and two Pyrex cooking pots which tested positive for cocaine residue.

21. Also, on May 6, 2003, a State Search Warrant was executed at 1540 25th Street, Sarasota, Florida. WANETTA PARKER was at the listed location, at which time she was arrested. A search of the listed location revealed a small quantity of cocaine base, along with pots and pans used to cook cocaine base.

22. During a post-Miranda interview, JOSLYN WALKER stated that he traveled to Sarasota from South Florida to deliver one (1) kilogram of cocaine to MILLS. WALKER admitted that he had made prior trips to Sarasota to deliver cocaine. KENITH TURNER, during a post-Miranda interview, stated that he was out of cocaine and he was intending to purchase two (2) kilograms of cocaine from MILLS, and that he had previously purchased one (1) kilogram of cocaine from MILLS at the 1475 Deer Hollow Drive residence when WALKER was present. WANETTA PARKER stated that she sells cocaine for MILLS, and that she is paid based upon the amount of cocaine she sells.

23. Based on the foregoing, your affiant submits that there is probable cause to charge JOSLYN WALKER, DAMOND MILLS, PATRICK LAVENDER, KENITH TURNER, and WANETTA PARKER with conspiracy to possess with intent to distribute and distribute five (5) or more kilograms of a mixture or substance containing a detectable amount of cocaine.

FRANK CAIRA
Special Agent, DEA

Sworn to before me and subscribed in my presence this 7th day of May, 2003.

MARY S. SCRIVEN
United States Magistrate Judge

7

RECEIVED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

03 MAY -8  PM 4: 52

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA          :

v.                                :

                                  :          CASE NO. 8:03-CR- 184-T-30EA-J

                                  :

JOSLYN WALKER,                    :
DAMOND MILLS,                     :
PATRICK LAVENDER,                 :
KENITH TURNER, and                :
WANETTA PARKER                    :

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

From an unknown date which was at least in or about September, 1997, through on or about May 6, 2003, in Sarasota County, in the Middle District of Florida and elsewhere, the defendants,

JOSLYN WALKER,
DAMOND MILLS,
PATRICK LAVENDER,
KENITH TURNER, and
WANETTA PARKER

did knowingly and willfully conspire and agree with each other and with persons both known and unknown to the Grand Jury to possess with intent to distribute and to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 846 and 841(b)(1)(A)(ii)

HABEAS CORPUS
EXHIBIT "B"

## FORFEITURE

1.      The allegations contained in Count One of this Indictment are hereby realleged

and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of

Title 21, United States Code, Section 853.

2.      From their engagement in any or all of the violations alleged in Count One of this

Indictment, punishable by imprisonment for more than one year, and Count One is realleged

and incorporated as if more fully set forth herein, the defendants

JOSLYN WALKER,
DAMOND MILLS,
PATRICK LAVENDER,
KENITH TURNER, and
WANETTA PARKER

shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853(a)(1)

and 853(a)(2), all of their interest in:

a.      Property constituting and derived from any proceeds the defendants

obtained, directly or indirectly, as the result of such violations; and

2.      Property used and intended to be used in any manner or

part to commit or to facilitate the commission of such

violations.

3.      Such forfeiture shall include all property, real or personal, tangible or intangible,

including any interest in said property of the defendants.

4.      If any of the property described above as being subject to forfeiture, as a result of

any act of omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third

person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853 (p), to

seek forfeiture of any other property of said defendants up to the value of the above forfeitable

property.

All in violation of Title 21, United States Code, Section 853.

A TRUE BILL,

_____

FOREPERSON

PAUL I. PEREZ
United States Attorney

By:_____
    ANTHONY E. PORCELLI
Assistant United States Attorney

By:_____
    JOSEPH K. RUDDY
Assistant United States Attorney
Deputy Chief, Narcotics Section

N:\msantiago\APorcelli\Walker_2002R01313\indictment.wpd